**Carol Bracken ORTEN**

v.

**Thaddeus Charles ORTEN.**

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

July 13, 2005 Session.

Aug. 26, 2005.

Permission to Appeal Denied by
Supreme Court Feb. 6, 2006.

Joe R. Judkins, Wartburg, Tennessee, for the Appellant Thaddeus Charles Orten.

Virginia A. Schwamm and Donna H. Smith, Knoxville, Tennessee, for the Appellee Carol Bracken Orten.

## OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., joined. SHARON G. LEE, J., filed a dissenting opinion.

Carol Bracken Orten ("Wife") sued Thaddeus Charles Orten ("Husband") for a divorce. During the course of discovery, Husband refused to provide certain financial information as he felt the information to be irrelevant. After Husband failed to appear without explanation at the second Trial Management Conference, the Trial Court entered a default judgment against Husband as a sanction for his actions. Husband's attorney immediately withdrew from the case and the Trial Court then proceeded to distribute the marital property and award Wife alimony and child support based solely on Wife's uncontested testimony. Husband secured new counsel and filed a motion to alter or amend the judgment, or for a new trial. The Trial Court denied Husband's motion and this appeal followed. We affirm.

### Background

On October 30, 2003, Wife filed a complaint for divorce seeking dissolution of her twenty-three year marriage to Husband. As grounds for divorce, Wife alleged Husband was guilty of inappropriate marital conduct and/or cruel and inhuman treatment. In the alternative, Wife claimed that irreconcilable differences had arisen between the parties. The parties have four children, two of whom are minors.

Husband's attorney, Robert Wilkinson ("Wilkinson") entered an appearance on December 31, 2003, and Husband formally answered the complaint on March 18, 2004. In Husband's answer, he denied engaging in inappropriate marital conduct or that grounds for divorce otherwise existed.

In April of 2004, Wife filed a motion to compel claiming Husband's responses to Interrogatories and Requests for Production of Documents were past due as they were two days late. A couple of weeks after the motion to compel was filed, the Trial Court entered a Trial Management Order. As pertinent to this appeal, the Trial Management Order provided as follows, with all emphasis being in the original:

This is set for contested trial **July 21, 2004.** A trial management/settlement conference will be held on *April 19, 2004,* at 9:00 a.m. *Both counsel and both parties must be present in open court for the trial management/settlement conference. There is no exception to this mandatory appearance by all four persons, other than full resolution of all issues, already reduced to a final order taxing costs, approved by all counsel, and presented by one attorney with his/her client on or before the day and time scheduled for the trial management.*

\* \* \* \*

**Pursuant to Rule 55 TRCP, notice is herewith given that a *default judgment may be pronounced against a party failing to comply with a trial management order.* See TRCP Rules 16.06 and 37.02 for other consequences.**

The Trial Management Order then detailed the matters that would be addressed at the management/settlement conference and what the parties and their attorneys were expected to accomplish before the conference.

On April 16, 2004, the Trial Court entered an Interim Order agreed to by the parties. The Interim Order required Husband to vacate the marital residence within thirty days. This order also set forth which of the marital bills each party would be responsible for paying until the trial took place. Husband's child support payments were set at $813 per month and his co-parenting time with the children also was established.

The first Trial Management Conference took place as scheduled on April 19, 2004, with both parties and their attorneys in attendance. Following the Trial Management Conference, the Trial Court entered an order requiring Husband to respond to Wife's discovery requests by April 30, 2004. Any further discovery requests had to be submitted no later than May 15, 2004, and discovery depositions had to be completed by June 30, 2004. The Trial Court previously had entered an order requiring the parties to submit their dispute to mediation, and the order entered following the Trial Management Conference stated that the parties had selected a mediator. Finally, a second Trial Management Conference was scheduled for June 28, 2004. The July 21, 2004 trial date remained unchanged.

Husband failed to appear at the second Trial Management Conference on June 28. Wilkinson was present but was unable to offer the Trial Court any explanation for his client's unexplained absence. The Trial Court noted that pursuant to Tenn. R. Civ. P. 16.06, if a party fails to obey a scheduling or pre-trial order, then the Trial Court, upon motion or the Trial Court's own initiative, can make such orders as provided for in Tenn. R. Civ. P. 37.02. Wife's attorney made such a motion, which the Trial Court granted by entering a default judgment against Husband. After granting the default against Husband, the Trial Court stated that Wife would be allowed to testify regarding distribution of the marital property and her request for alimony, etc., and Husband would be allowed only to cross-examine Wife and could not put on any direct proof on these

issues. After the Trial Court explained how the case would proceed, Wilkinson orally moved to withdraw from representing Husband. The Trial Court granted the motion stating:

> Mr. Wilkinson prays for withdrawal and the same is allowed. That would then mean, Mr. Wilkinson, from this point forward there will be no cross-examination and [Wife's attorney] will prepare the decree.... There being no cross-examination, then, we can take the wife's proof ....

Husband's attorney presumably left the courtroom and then Wife was called to testify. Following the hearing, the Trial Court entered a Final Judgment of Divorce. In summary, the Final Judgment stated that Husband had sufficient notice of the second Trial Management Conference and was not present, that Husband had stated he would not comply with written discovery requests seeking documentation of financial accounts, including credit card accounts, and that a judgment by default was being entered against Husband.[1] Accordingly, the Trial Court granted Wife a divorce based on her unrefuted testimony as to her grounds for divorce. The Trial Court found Wife could not be rehabilitated and established Husband's alimony payment at $25 per month while he was paying child support for both minor children, $325 per month when the next oldest minor child became emancipated, and $1,000 per month when Husband's child support obligation ceased altogether. The Trial Court awarded Wife 60% of the equity in the marital residence, which equaled $30,000. Husband was awarded the remaining 40%. The Trial Court equally divided Husband's retirement account. Wife was awarded a 2000 GMC Safari Van and Husband was awarded a 2004 Volks-

wagen. Each party was awarded the personal property in their possession.

With regard to the marital debts, Husband was required to pay all of the following: (1) $1,700 on the Bank of America Visa, (2) $5,000 on the Chase Visa, (3) $6,000 on the Discover Card; and (4) the $6,000 in remaining debt on a piano purchased by the parties. The Trial Court ordered Husband to pay approximately $10,000 of Wife's credit card debt as attorney fees awarded to Wife. Wife was ordered to pay a total of $1,106.64 in credit card debt.

Husband immediately obtained new counsel and filed a motion to alter or amend or, in the alternative, motion for new trial. In this motion, Husband claimed he simply forgot about the Trial Management Conference scheduled on June 28, 2004, although he admitted receiving the order setting the second conference for that date. Husband claimed that had his attorney, Wilkinson, simply reminded him of the conference or called him that morning, he would have been present. A hearing was held on Husband's motion and Husband testified at the hearing. In summary, Husband testified consistent with the points raised in the motion for new trial and further pointed out that he was present for all other necessary events during the course of the proceedings. Since Husband tried to cast partial blame on Wilkinson for his alleged failure to keep Husband properly apprised, the Trial Court reserved ruling on Husband's motion until Wilkinson's testimony could be obtained. Wilkinson's deposition was taken and he testified, among other things, that he discussed the scheduled second Trial Management Conference with

---

1. In Husband's deposition, he boldly refused to provide certain financial information claiming, in his opinion, that the requested information was not relevant.

opposing counsel at Husband's deposition just three days before the second conference on June 28, 2004. This conversation took place while Husband was in the "same room." Again, we note there is no question that Husband received a copy of the order scheduling the second Trial Management Conference.

After considering Husband's and Wilkinson's testimony, the Trial Court denied Husband's motion to alter or amend or for a new trial. The Trial Court acknowledged that default judgments are not favored under the law. However, the Trial Court also stated that notice to Husband of the second Trial Management Conference was "absolutely clear." According to the Trial Court:

> [Husband's] nonappearance for Trial Management is very much of a piece with his earlier behavior in the case: obstructive; in some cases, defiant; delaying; not complying with discovery. And this nonappearance on Trial Management day, 6/28/04, would constitute a further act, if you will, of passive aggression. I'm just not going to be a part of it. I oppose it.
>
> [Husband stated he] simply forgot, but Page 25 of Mr. Wilkinson's deposition shows the unlikelihood that ... [Husband's] account or suggestion is credible.

Husband appeals raising only two issues. First, Husband claims the Trial Court erred when it entered a default judgment against him based on his failure to appear at the Trial Management Conference. In the alternative, Husband argues the Trial Court erred when it failed to grant his motion to alter or amend or for a new trial.[2]

*2.* Husband does not raise in his brief any issues regarding the propriety of the marital

### Discussion

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R.App. P. 13(d); *Bogan v. Bogan,* 60 S.W.3d 721, 727 (Tenn.2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.,* 58 S.W.3d 706, 710 (Tenn.2001).

Tenn. R. Civ. P. 16.06 provides as follows:

> **16.06. Sanctions.**—If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37.02. In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

property distribution or award of alimony.

Tenn. R. Civ. P. 37.02 sets forth various types of orders that can be entered by a trial court in response to a party's failure to comply with certain orders. These include:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, *or rendering a judgment by default against the disobedient party;*

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

\* \* \* \*

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. (emphasis added) [3]

The issue of whether the entry of a default judgment against Husband was too severe necessarily requires us to examine why the Trial Court believed such a sanction was justified. In short, the Trial Court did not believe Husband's account that he inadvertently forgot about the scheduled Trial Management Conference. Instead, the Trial Court concluded Husband's nonappearance was part of his "obstructive" and "defiant" behavior which had been exhibited throughout the course of the proceedings. Whether Husband's nonappearance was due to his being obstructive and defiant, or whether it was due to inadvertent oversight as Husband claims, was a question of fact to be determined by the Trial Court after considering all relevant proof. In *Wells v. Tennessee Bd. of Regents,* our Supreme Court observed:

Unlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. *See State v. Pruett,* 788 S.W.2d 559, 561 (Tenn.1990); *Bowman v. Bowman,* 836 S.W.2d 563, 566 (Tenn.Ct.App.1991). Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. *See Tenn-Tex Properties v. Brownell–Electro, Inc.,* 778 S.W.2d 423, 425–26 (Tenn. 1989); *Mitchell v. Archibald,* 971 S.W.2d 25, 29 (Tenn.Ct.App.1998). Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary. *See Humphrey v. David Witherspoon, Inc.,* 734 S.W.2d 315, 315–16 (Tenn.1987); *Bingham v.*

---

**3.** Tenn. R. Civ. P. 37.02(C) specifically permits entry of a default judgment under specified circumstances. Contrary to Husband's argument on appeal, the present case in no way involves the entry of default judgment pursuant to Tenn. R. Civ. P. 55, which authorizes the entry of a default judgment when a party fails to plead or otherwise defend an action as set forth in the applicable rules.

*Dyersburg Fabrics Co., Inc.*, 567 S.W.2d 169, 170 (Tenn.1978).

*Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn.1999).

After reviewing the proof, we are unable to conclude the evidence preponderates against the Trial Court's factual conclusion regarding the underlying reason Husband failed to appear at the Trial Management Conference. The issue then becomes whether a default judgment can be an appropriate sanction when a party intentionally fails to appear at a trial management conference because they are being obstructive and defiant.

*March v. Levine*, 115 S.W.3d 892 (Tenn. Ct.App.2003), involved a wrongful death action where the trial court entered a default judgment against Perry March ("March") after he refused to return to Nashville for a deposition after being ordered by the court to do so. March did offer to give a telephonic deposition or to submit to a deposition in Mexico. The trial court entered the default judgment against March as a sanction pursuant to Tenn. R. Civ. P. 37.02(C). After the default judgment was entered, a jury assessed $113,500,000 in damages against March. In reversing the entry of the default judgment, we stated:

Default judgments in general should be set aside if reasonable doubt exists as to the conduct of the defaulting party. *Tennessee State Bank v. Lay*, 609 S.W.2d 525 (Tenn.Ct.App.1980); *Nelson v. Simpson*, 826 S.W.2d 483 (Tenn.Ct. App.1991). This rule must be balanced against the rule that the trial judge may be reversed on the imposition of sanctions only by an affirmative showing of an abuse of discretion. *Brooks v. United Uniform Co.*, 682 S.W.2d 913 (Tenn. 1984).... Considering the conduct of Mr. March subsequent to the filing of the wrongful death action, the imposition

of a default judgment is simply too drastic a sanction for his behavior. Throughout this entire proceeding, Perry March has not been the only transgressor. The Levines, in their zeal to sustain their position and to punish Perry March for what they sincerely believe to be the murder of their daughter, have contributed greatly to the problems in this case. This Court recognizes the patience and fortitude of the learned trial judge in trying his best to control this litigation, preserve the absentee estate, and maintain the integrity of his court in the face of nearly insurmountable challenges.

*Id.* at 913.

In *Yearwood, Johnson, Stanton & Crabtree, Inc. v. Foxland Development Venture*, 828 S.W.2d 412 (Tenn.Ct.App.1991), we upheld a trial court's entry of a default judgment against the defendant pursuant to Rule 37.02. We stated:

The propriety of the judge's action depends, in part, on whether he was correct in granting the default in the first place. We think he was—on two separate grounds. First, Rule 37.02(C), Tenn. R. Civ. P., authorizes a trial judge to enter a default judgment for the defendant's failure to comply with discovery orders. Second, the defendants did not get new counsel within the time allowed and did not answer the plaintiff's amended complaint.

*Id.* at 413–14. *See also Hodges v. Att'y General*, 43 S.W.3d 918, 921 (Tenn.Ct.App.2000)("Trial courts possess inherent, common-law authority to control their dockets and the proceedings in their courts. Their authority is quite broad and includes the express authority to dismiss cases for failure to prosecute or to comply with the Tennessee Rules of Civil Procedure or the orders of the court.").

■ The foregoing makes clear that the Trial Court had discretion regarding if and how to sanction Husband for his improper conduct. We likewise review the Trial Court's denial of Husband's motion to alter or amend or for a new trial pursuant to an abuse of discretion standard.[4] *See Robinson v. Currey*, 153 S.W.3d 32, 38 (Tenn.Ct. App.2004) ("We review a trial court's denial of a Tenn. R. Civ. P. 59.04 motion to alter or amend a judgment for abuse of discretion.")(quoting *Chambliss v. Stohler*, 124 S.W.3d 116, 120 (Tenn.Ct.App.2003)). After reviewing the entire record and giving credence to the Trial Court's factual findings, we are unable to conclude that the Trial Court abused its discretion when it entered a default judgment against Husband, or that it abused its discretion when it denied Husband's Rule 59 motion to alter or amend or for a new trial.

### Conclusion

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for collection of the costs below. Costs on appeal are assessed against the Appellant, Thaddeus Charles Orten, and his surety.

SHARON G. LEE, J., filed a dissenting opinion.

SHARON G. LEE, dissenting.

I respectfully dissent from the majority opinion. I would hold that the trial court erred in not setting aside the entry of the default judgment against Mr. Orten. In my judgment the evidence supports the conclusion that Mr. Orten did not intentionally fail to appear at the second Trial Management Conference, but simply forgot to appear. Entry of a default judgment against Mr. Orten is too drastic a measure in this case.

A review of the evidence indicates that Ms. Orten filed for divorce on October 30, 2003; Mr. Orten answered and denied that grounds for divorce existed. On February 27, 2004, Ms. Orten sent Mr. Orten interrogatories and a request for production of documents. The discovery requests are not in the record, but from statements in Mr. Orten's deposition, it appears that among other things, records requested included cancelled checks and credit card statements for the past five years. On April 2, 2004, when Mr. Orten's answers were two days late, Ms. Orten filed a motion to compel responses to the interrogatories and request for production of documents. There was no hearing date set for this motion.

On April 15, 2004, a Trial Management Order was entered setting a Trial Management Conference for April 19, 2004, and setting the case for trial on July 21, 2004. This order included the language noted by the majority that both counsel and parties must be present in open court.

On April 16, 2004, an Interim Order was entered, upon motion of Ms. Orten and the agreement of the parties, which, *inter alia,* ordered Mr. Orten to move out of the marital residence within 30 days.

On April 19, 2004, Mr. Orten appeared at the first Trial Management Conference. On that same date, the parties filed a joint property and debt listing as required by court rules. On that same date, April 19, 2004, a second Trial Management Order

---

**4.** As an alternative argument on appeal, Husband argues that he is entitled to relief from the judgment pursuant to Tenn. R. Civ. P. 60.02. Husband's motion to alter or amend or for a new trial was filed before the Trial Court's judgment became final. Therefore, it is a motion which was timely filed pursuant to Tenn. R. Civ. P. 59.02 and/or 59.04. Because the judgment had not become final, the provisions of Tenn. R. Civ. P. 60.02 are not implicated because that Rule governs how a party can obtain relief from a final judgment.

was entered which set a second Trial Management Conference for June 28, 2004, and left unchanged the trial date of July 21, 2004. This order also contained the mandatory appearance language of the first Trial Management Order. Also on April 19, 2004, an order was entered which required the parties to attend mediation.

On April 30, 2004, an order was entered from the first Trial Management Conference which provided, *inter alia*, that the trial date was still set for July 21, 2004, and ordered Mr. Orten to produce requested discovery to Ms. Orten by April 30, 2004. This order also set the date for the second Trial Management Conference for June 28, 2004, but, unlike the previous Order, it did not contain the mandatory attendance language.

Mr. Orten appeared at a discovery deposition on Friday, June 25, 2004, where he was deposed by Ms. Orten's attorney.

On Monday, June 28, 2004, the trial court commenced the second Trial Management Conference, but Mr. Orten was not present. His counsel advised the trial court:

We did have depositions on Friday and in the course of agreeing to continue those depositions until a subsequent date, I have to assume, without having spoken to my client, I have to assume that must have caused some confusion in his mind. But I have no idea, your honor.

We have sent correspondence to him. He has indicated in the past he has not received all that correspondence. It has not come back to us. So I know that I have sent him notices with respect to today's hearing, but as I have indicated, perhaps as a result of some confusion as a result of continuing the depositions, I can only imagine. Clearly this matter was set for today.

Ms. Orten's counsel requested that a default judgment issue against Mr. Orten. Mr. Orten's counsel requested the trial court issue sanctions against Mr. Orten rather than a default judgment. The trial court responded: "It is a severe blow to the husband's case, but it is one he has brought upon himself. So motion denied. I am sorry." The trial court awarded Ms. Orten a default judgment based on Mr. Orten's failure to attend the conference and his failure to comply with discovery requests. The trial court allowed Mr. Orten's counsel to withdraw from representation of Mr. Orten, and allowed Ms. Orten to present her case, in the absence of Mr. Orten and without counsel for Mr. Orten. On July 26, 2004, Mr. Orten's new attorney entered an appearance in the case.

Subsequently, an order was entered from the June 28, 2004 hearing which, *inter alia*, granted Ms. Orten a divorce, divided the marital estate, approved Ms. Orten's parenting plan, and awarded Ms. Orten alimony until her death or remarriage.

Mr. Orten filed a motion to alter or amend or, in the alternative, for a new trial. The trial court denied the motion finding that Mr. Orten was given "clear, complete and repeated" notice of the trial management proceeding and that Mr. Orten's nonappearance was consistent with his "obstructive and defiant behavior throughout the case and constitutes a further act of passive aggression."

At the hearing on Mr. Orten's motion, Mr. Orten testified that except for the second Trial Management Conference, he had attended every scheduled divorce event—the discovery deposition, the mediation session, and the first Trial Management Conference. He did not attend the second Trial Management Conference because he forgot it was set that day. He explained to the trial court that had he

remembered the hearing was set, he would have attended; that had his lawyer reminded him of the hearing, he would have been there. For all his other required appearances, his lawyer had reminded him to be there before the scheduled date. He did not recall hearing any discussion about the Trial Management Conference at the deposition. As he was leaving the deposition, his lawyer told him he would call him to remind him of the date they were getting together, but he did not receive a call that weekend.

Mr. Orten admitted that he received the Trial Management Order regarding the June 28, 2004 conference, but that it was in "stuff boxed up to move" which remained in boxes after he moved from the marital residence. He did not have the conference date written on a calendar anywhere.

Mr. Orten's discovery deposition, which was admitted into evidence, does not reveal any discussions about the upcoming second Trial Management Conference. In the deposition, Mr. Orten testified that he had not actually received the interrogatories or request for documents but had reviewed them at his lawyer's office with his lawyer's secretary. The discovery requests are not in the record, but it appears from questions asked of Mr. Orten in his deposition that he was asked to provide cancelled checks, check registers, check stubs, deposit slips, debit or credit memoranda, transaction advances and bank statements for all bank accounts he had any involvement with for the last five years. Mr. Orten did not bring these records to the deposition as requested by wife's counsel. He told her he had previously told his attorney that he did not keep those records more than a couple of months. The records involved a joint account to which the wife had access and Mr. Orten's separate account. Later in the deposition, Mr. Orten agreed that he would provide eighteen months of bank statements. When asked for five years of monthly credit card statements for Chase, Bank of America and Discover statements, Mr. Orten said he would bring the current statements but, "I am not going to go back that many years ... there is no need to." The deposition continued on other matters and at the conclusion, wife's counsel stated that the deposition of Mr. Orten was being suspended and would be finished at a later date. She stated "if we could have those documents we asked for by the next time, it would really be helpful." Thereupon the deposition was concluded on Friday, June 25, 2005 to be completed at a date to be scheduled.

Mr. Orten's former lawyer, Mr. Wilkerson, testified by deposition that Mr. Orten had appeared at every other scheduled event in the divorce litigation—the mediation, the first Trial Management Conference on April 19, 2005, the discovery deposition on June 25, 2004, and his office appointments. When Mr. Orten did not appear at the second Trial Management Conference, Mr. Wilkerson had his secretary attempt to call Mr. Orten, but she was not able to reach him. Mr. Wilkerson testified:

> I think Thaddeus was having a difficult time for the entire process of the divorce itself, a divorce he did not want, the process of going through and identifying properties and pay out sums of money over which he had no control, and I think that the deposition was very difficult for him. So, I see where he may have forgotten that he was required to appear on Monday, the 28th.

Mr. Orten never gave any indication to Mr. Wilkerson on Friday at the deposition that he would not appear on Monday. It is Mr. Wilkerson's policy to have his office call the day before to remind clients of appointments and court hearings. In this

case, Mr. Wilkerson testified that he would have been surprised if this was done because of the depositions they were involved in on Friday. As to the discussion on Friday about the second Trial Management Conference on Monday, Mr. Wilkerson testified:

> Q: Did you directly have a discussion with Mr. Orten on June the 25, 2004 about the court date, that is the Trial Management Conference on the following Monday, June the 28th?
>
> A: I cannot say that I specifically told him or reminded him that on Monday, we were to be in court. I know there had been some discussion prior to the deposition, a discussion between Donna Smith and me, talking abut the Trial Management Conference. Mr. Orten was not a part of that discussion, although he was in the same room. After the deposition, I think we talked a little bit about the deposition. I don't remember specifically saying, "Don't forget, we'll be together first thing Monday morning." I just don't remember saying that.

Mr. Wilkerson also testified that in his opinion, Mr. Orten had a colorable defense to the alimony issue which Mr. Wilkerson deemed the most significant issue in the case.

Based upon this proof, I think it is more likely than not that Mr. Orten simply forgot to appear at the second trial management conference. Upon his wife's filing of the divorce action, he retained an attorney, filed an answer, attended a mediation session, attended a deposition, attended the first Trial Management Conference, met with his lawyer in his office to discuss the case, and filed the required joint list of property and debts. In short, he made every required appearance, except the second Trial Management Conference. I am not condoning in any sense Mr. Orten's failure to appear at the conference. Clearly, he should have followed the trial court's rules. The trial court has the difficult task of maintaining its docket so that justice is dispensed as efficiently and effectively as possible. However, given the circumstances in this case, that Mr. Orten made every other required appearance, that he was required to move from the marital home about the time he received the Order containing the date of the conference, that the order was packed in a box, that he did not have the conference date on his calendar, that he was not reminded to attend by his attorney as he had been previously for court hearings and events, and that his lawyer did not recall discussing it with him or reminding him about the conference on the Friday during depositions—it is more likely than not that he simply forgot to attend. Mr. Orten's testimony was corroborated by the testimony of his former lawyer whose credibility and veracity were not impeached. I am not persuaded that Mr. Orten knew about the conference because his lawyer and his wife's lawyer were discussing it in the same room prior to Mr. Orten's deposition. Mr. Orten is not a lawyer and this was his first deposition. Under those circumstances, Mr. Orten should not be credited with hearing and comprehending conversations to which he was not a direct participant. It is very unfortunate that Mr. Orten did not attend the conference, but it should not be fatal to the defense of his divorce action. The action of entering a default judgment was too drastic in this case. The trial court had other less severe options which included, but were not limited to, rescheduling the conference with wife's attorney's fees assessed to Mr. Orten or proceeding with the conference in Mr. Orten's absence. Had the trial court done so, the matter very likely would have proceeded to trial on the merits with both parties having their day in court on July 21, 2004—less

than a month later. It appears that the trial court, in denying the motion to set aside the default judgment, considered whether Mr. Orten had notice of the conference, whether Mr. Orten's failure to appear was willful, and Mr. Orten's failure to respond to discovery requests. It does not appear that the trial court considered whether setting aside the default would prejudice Ms. Orten and whether Mr. Orten had a meritorious defense.

Mr. Orten made a mistake when he refused to produce credit card records and bank statements as requested by wife's counsel. It is more likely than not that Mr. Orten did not have five years or even eighteen months of these records in his possession. Clearly he should have started the process of procuring these records or filed a motion seeking relief from the trial court if the request was too burdensome. Simply refusing to provide the records was not in compliance with the rules and certainly, was not a wise course of action for Mr. Orten. It should be noted that there was never a petition for contempt filed against Mr. Orten for not producing the records. By the end of the deposition, he did agree to produce the bank records and counsel agreed to schedule a time to continue the deposition of Mr. Orten. The deposition ended harmoniously. The evidence preponderates against the trial court's conclusion that Mr. Orten's conduct reached the level of "obstructive and defiant behavior throughout the case" as described by the trial court.

Tenn. Rule Civ. P. 55.02 provides that "for good cause shown the court may set aside a judgment by default in accordance with Rule 60.02." Tenn. Rule Civ. P. 60.02 provides that the court may relieve a party from a final judgment for several enumerated reasons including mistake, inadvertence, surprise or excusable neglect, or any other reason justifying a relief from

the operation of the judgment. Tenn. Rule Civ. P. 60 is aimed at striking a balance between the competing interests of justice and finality. *Whitaker v. Whirlpool Corp.,* 32 S.W.3d 222, 231 (Tenn.Ct. App.2000). The interests of justice are best served when lawsuits are resolved on their merits after trial. *Akers v. Bonifasi,* 629 F.Supp. 1212 (M.D.Tenn.1984). Tenn. Rule Civ. P. 60 is construed with liberality to afford relief from a default judgment. *Tennessee Department of Human Services v. Barbee,* 689 S.W.2d 863, 867 (Tenn. 1985). Default judgments should be set aside if reasonable doubt exists as to the conduct of the defaulting party. *Nelson v. Simpson,* 826 S.W.2d 483, 485–486 (Tenn. Ct.App.1991), *March v. Levine,* 115 S.W.3d 892, 913 (Tenn.Ct.App.2003). If there is any doubt about whether a default judgment should be set aside, the court should exercise its discretion in favor of granting relief to allow the case to be decided on its merits. *Keck v. Nationwide Sys.,* 499 S.W.2d 266, 267 (Tenn.Ct.App.1973), *Reynolds v. Battles,* 108 S.W.2d 249, 251 (Tenn. Ct.App.2003), *Tennessee State Bank v. Lay,* 609 S.W.2d 525, 527 (Tenn.Ct.App. 1980). Whether entry of a default should be set aside is a matter committed to the discretion of the trial court and involves consideration of these factors: (1) whether the default was the result of wilful conduct by the defaulting party; (2) whether the non-defaulting party would be prejudiced if the entry of default were set aside; and (3) whether the defaulting party has shown a meritorious defense. *Tennessee Department of Human Services v. Barbee,* at 866, *Reynolds v. Battles,* at 251. Judgment by default for failure to obey an order to provide discovery is an extreme sanction. *March v. Levine,* at 912.

After reviewing the record, I conclude that the evidence preponderates in favor of the conclusion that Mr. Orten's conduct was not willful; that Mr. Orten had a

meritorious defense; and that setting aside the default judgment would not unduly prejudice Ms. Orten. Further, I conclude that the trial court abused its discretion in not setting aside the default judgment because it failed to consider the requisite factors which are the willfulness of the conduct, the effect of setting aside the default judgment on the non-defaulting party and whether the defaulting party had a meritorious defense. The record supports the conclusion that Ms. Orten would not have been prejudiced by proving her case on the merits rather than winning by default. The record supports the conclusion that these parties would have been better served with a trial on the merits rather than a default judgment at a trial management conference. For these reasons, I would reverse the decision of the trial court and remand for a trial on the merits.